UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
TROI TORAIN,                          :    16 Civ. 2682 (VEC) (JCF)
                                      :
            Plaintiff,                :        REPORT AND
                                      :      RECOMMENDATION
    - against -                       :
                                      :
RAASHAUN CASEY, IHEART MEDIA, INC.,   :
And REVOLT MEDIA & TV, LLC,           :
                                      :
            Defendants.               :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE VALERIE CAPRONI, U.S.D.J.

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9 / 16 / 16
```

    Troi Torain brings this action pro se alleging five state

law claims against the defendants -- Raashaun Casey, iHeart

Media, Inc. ("iHeart Media"), and Revolt Media & TV, LLC

("Revolt").  The plaintiff asserts that the defendants used his

name without authorization in violation of section 51 of the New

York Civil Rights Law ("NYCRL").  He also alleges common law

claims for emotional distress; negligent hiring, supervision,

and retention; and gross negligence.  The defendants now move to

dismiss the complaint pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  For the reasons set forth below, I

recommend that the defendants' motions to dismiss be granted but

that the plaintiff be given leave to file an amended complaint.

Background

    The facts recited here are derived from the plaintiff's

complaint and the papers he filed in opposition to the

defendants' motions. "Generally, '[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended or incorporated into the complaint by reference, and to matters of which judicial notice may be taken.'" Ceara v. Deacon, 68 F. Supp. 3d 402, 405 (S.D.N.Y. 2014) (alteration in original) (quoting Leonard F. v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral to the complaint.'" (quoting International Audiotext Network, Inc. v. American Telephone and Telegraph Co., 62 F.3d 69, 72 (2d Cir. 1995))). However, "when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in in a pro se litigant's opposition papers and other court findings." Rodriguez v. Rodriguez, No. 10 Civ. 00891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013). Because the factual allegations in Mr. Torain's opposition papers are consistent with those in his complaint, I take them into consideration in ruling on the present motions. See Alsaifullah v. Furco, No. 12 Civ. 2907, 2013 WL 3972514 at *4 n.3 (S.D.N.Y.

Aug. 2, 2013).

   The plaintiff is a fifty-one year old hip-hop radio personality and disk jockey. (Complaint, ¶ 5; Plaintiff's Memorandum of Law in Support of Opposition to Motion to Defendant's Motion to Dismiss ("Pl. Memo.") at 1). He was formerly employed by Clear Channel (now known as iHeart Media), but was terminated in 2006 due to his on-air comments regarding Mr. Casey. (Pl. Memo. at 1). The comments were the result of a feud between Mr. Torain and Mr. Casey. (Pl. Memo. at 1). The plaintiff currently has his own YouTube channel called the "Star Chamber." (Pl. Memo. at 1).

   In September 2015, Jayceon Taylor (a rapper known as "The Game") was invited to appear on an iHeart Media morning show, "The Breakfast Club." (Complaint, ¶ 14; Pl. Memo. at 1-2). Revolt broadcasts the program nationally on various radio stations and on YouTube. (Complaint, ¶¶ 14, 17-18; Pl. Memo. at 1-2). During the interview, which took place on iHeart Media's property, Mr. Casey (also known as "DJ Envy") mentioned the plaintiff's moniker, "Star." (Pl. Memo. at 2, 5). In response, Mr. Taylor "made false, derogatory, and physically threatening statements with regards to the plaintiff." (Complaint, ¶ 16; Pl. Memo. at 2). His exact comments were:

>    You know, back in the day, like, I remember, like --
>    who was the dude on the radio out here?  I told him, I

was like, "Dude I'll break your jaw dude." Like Envy [Casey] is my dog. I'm still gonna break his jaw when I see him. I don't -- like I never seen him since then, but I got you. Because we was fathers at that time, and like, we was really on our parent stuff. And dude was talking. And, you know, Envy's baby girl and all of that. And, you know, I ain't like it.

(Pl. Memo. at 2).[1]

After learning about the interview via Twitter, Mr. Torain filed a police report for aggravated harassment. (Pl. Memo. at 2). The defendants did not take down or redact the interview after they received notice of the police report. (Pl. Memo. at 4). According to the plaintiff, Mr. Taylor has a history of following through on threats he makes, and has implied that he was involved in the death of another person. (Pl. Memo. at 7).

Mr. Torain alleges that he has suffered severe emotional distress, mental anguish, humiliation, embarrassment, and financial losses as a result of the defendants' actions. (Complaint, ¶¶ 24, 30, 37, 47). He contends that the defendants were trying to promote a feud between him and Mr. Casey, an

---

[1] The defendants include a link to the interview in their motions to dismiss. (Defendants iHeart Media and Raashaun Casey's Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint ("iHeart Memo.") at 2 n.2; Memorandum of Law in Support of Defendant Revolt Media & TV, LLC's Motion to Dismiss ("Revolt Memo.") at 5 n.4). Because the interview is integral to the Complaint, I may consider the video without converting the motions into motions for summary judgment. See Edwards v. Raymond, 22 F. Supp. 3d 293, 297 (S.D.N.Y. 2014) (considering recording not attached to complaint but which plaintiff "clearly relied upon" in filing suit).

employee of iHeart Media and Revolt, in order to generate more revenue.  (Pl. Memo at 4).  He further asserts that iHeart Media and Revolt knew or should have known about the animosity between Mr. Casey and himself and that "[Mr.] Casey would be likely to act [in] a negligent and reckless manner."  (Complaint, ¶ 41; Pl. Memo. at 5).

The plaintiff originally filed this action in New York state Supreme Court, and the defendants removed it to this court on the basis of diversity jurisdiction.

<u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  In other words, it must provide sufficient factual material to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  While "detailed factual allegations" are not required, it must contain more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).  "Allegations pled on 'information and belief' are proper if "accompanied by a

statement of the facts upon which the belief is founded." Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006) (quoting Shopping Mall Investors, N.V. v. E.G. Frances & Co., No. 84 Civ. 1469, 1985 WL 210 (S.D.N.Y. Jan. 23, 1985)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010).

In ruling on a motion to dismiss, the court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)). Furthermore, a pro se complaint must be considered under a more lenient standard than would be applied to "formal pleadings drafted by lawyers." Bellamy v. Mount Vernon Hospital, No. 07 Civ. 1801, 2009 WL 1835939, *3 (S.D.N.Y. June 26, 2009) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam)). Even after Iqbal, a court should construe a pro se complaint "liberally and interpret it 'to raise the strongest arguments that [it] suggest[s].'" Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (alterations in original) (quoting Harris v. City of New York, 607 F.3d 18, 24 (2d Cir.

6

2010)).   Nevertheless, a pro se litigant is not relieved of the minimum pleading requirements.   Id.

Analysis

    A.   New York Civil Rights Law §51

    Although "[t]here is no common law right to privacy . . . in New York," Burck v. Mars, Inc., 571 F. Supp. 2d 446, 450 (S.D.N.Y. 2008), a limited statutory protection exists under the New York Civil Rights Law, N.Y. Civ. Rights Law §§ 50, 51.   See Chimarev v. TD Waterhouse Investor Services, Inc., 280 F. Supp. 2d 208, 228 (S.D.N.Y. 2003) ("In New York, 'the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights Law. . . .'" (quoting Howell v. New York Post Co., 81 N.Y.2d 115, 123, 596 N.Y.S.2d 350, 354 (1993))), aff'd, 99 F. App'x 259 (2d Cir. 2004).   The statute applies to "nonconsensual commercial appropriations" and "prohibit[s] the use of pictures, names or portraits 'for advertising purposes or for the purposes of trade' only, and nothing more."   Finger v. Omni Publications International, Ltd., 77 N.Y.2d 138, 141, 564 N.Y.S.2d 1014, 1016 (1990) (quoting Arrington v. New York Times Co., 55 N.Y.2d 433, 439, 449 N.Y.S.2d 941, 943 (1982)); accord Messenger ex rel. Messenger v. Gruner & Jahr Printing & Publishing, 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52, 55 (2000) (per curiam).   Accordingly, to state a claim for a violation of section 51, "a plaintiff must

show that the defendant (1) used his name, portrait, picture, or voice, (2) for advertising or trade purposes, (3) without his written consent."   <u>Burck</u>, 571 F. Supp. 2d at 451; <u>see also</u> <u>Molina v. Phoenix Sound, Inc.</u>, 297 A.D.2d 595, 597, 747 N.Y.S.2d 227, 230 (1st Dep't 2002) (noting that prohibited use must occur "within the state of New York").

Mr. Torain claims that the defendants' used his name[2] during

---

[2]   Although New York courts narrowly interpret what constitutes a "name," <u>see e.g.</u>, <u>DeClemente v. Columbia Pictures Industries, Inc.</u>, 860 F. Supp. 30, 52-53 (E.D.N.Y. 1994) (explaining that privacy and publicity protections do not apply if nickname is known only to a small group of close friends and associates), they have disagreed about the extent to which a nickname may be covered. <u>Compare</u> <u>Cerasani v. Sony Corp.</u>, 991 F. Supp. 343, 356 (S.D.N.Y. 1998) ("[C]ourts have repeatedly dismissed [§ 51] claims premised on the use of a fictitious rather than actual name."), <u>and</u> <u>Geisel v. Poynter Products, Inc.</u>, 295 F. Supp. 331, 355 (S.D.N.Y. 1968) (concluding that, as "an assumed name or pseudonym rather than a surname," "Dr. Seuss" was "not a protect[a]ble name within the meaning of Section 51"), <u>with</u> <u>Gardella v. Log Cabin Products Co.</u>, 89 F.2d 891, 894 (2d Cir. 1937) ("If the stage name has come to be closely and widely identified with the person who bears it, the need for protection [under § 51] will be as urgent as in the case of a private name . . . ."), <u>and</u> <u>Ali v. Playgirl, Inc.</u>, 447 F. Supp. 723, 726-27 (S.D.N.Y. 1978) (finding image of black boxer to be "clearly recognizable" as Muhammad Ali, in part because figure was described as "The Greatest" and "Ali [] regularly claimed that appellation for himself."), <u>and</u> <u>Rosenberg v. Lee's Carpet & Furniture Warehouse Outlet, Inc.</u>, 80 Misc. 2d 479, 480-481, 363 N.Y.S.2d 231, 232-233 (N.Y. Sup. Ct. 1974) (describing advertisement with reference to "Jerry" and photo of plaintiff, who was "popularly known to television viewers as 'Jerry,'" as a "clear violation of Section 51 of the Civil Rights Law"). However, because Mr. Torain's allegations fail to satisfy the second element of a section 51 claim, as discussed below, it is unnecessary to determine whether his alias, "Star," qualifies as a name for purposes of statutory protection.

The Breakfast Club for commercial gain, and without his consent. (Complaint, ¶¶ 21-23).  Other than a conclusory assertion that the defendants "used [his] name for purpose [sic] of advertising and/or trade" (Complaint, ¶ 20), however, the Complaint contains no facts to suggest that the alleged use fell within the scope of the Civil Rights Law.  Nothing in the complaint or Mr. Torain's opposition papers suggest that his moniker was used "in, or as part of, an advertisement or solicitation for patronage of a particular product or service." Beverley v. Choices Women's Medical Center, Inc., 78 N.Y.2d 745, 751, 579 N.Y.S.2d 637, 640 (1991) (defining "advertising purposes" as use of plaintiff's likeness "in a manner directly and professionally related to [defendant's] product" that "cannot be deemed merely incidental to [defendant's] unmistakable commercial message and purpose"); accord Morse v. Studen, 283 A.D.2d 622, 622, 725 N.Y.S.2d 93, 94 (2d Dep't 2001).  Even taking as true the plaintiff's allegation that the defendants invoked his name "in order to garner more views by re-igniting an old feud" (Pl. Memo. at 4), an underlying motive to increase viewers and revenue does not establish use for advertising or trade purposes.  See Davis v. High Society Magazine, Inc., 90 A.D.2d 374, 379, 457 N.Y.S.2d 308, 313 (2d Dep't 1982) (characterizing use "spurred by [] profit motive or [] to encourage sales or

distribution" as "a necessary, but hardly a sufficient, ingredient in determining the existence of a trade purpose"); but see Leviston v. Jackson, 43 Misc. 3d 229, 236–37, 980 N.Y.S.2d 716, 721 (N.Y. Sup. Ct. 2013) (denying summary judgment where defendant used video of plaintiff, who was not a public persona, "to generate interest in himself and to attract viewers to his website" because "it [could not] be concluded as a matter of law that there was no trade purpose involved in posting").

Furthermore, not every unauthorized use of an individual's name in connection with trade or advertising constitutes a violation of section 51. Damron v. Doubleday, Doran & Co., 133 Misc. 302, 303, 231 N.Y.S. 444, 445 (N.Y. Sup. Ct. 1928), aff'd sub nom. Damron v. Doubleday Doran Book Shops, Inc., 226 A.D. 796, 234 N.Y.S. 773 (1st Dep't 1929) and Damron v. Ferber, 226 A.D. 796, 234 N.Y.S. 774 (1st Dep't 1929). To trigger liability, the use of the name must not only be "'sufficiently related to a commercial end' or 'mercantile rewards,'" Zoll v. Jordache Enterprises Inc., No. 01 Civ. 1339, 2003 WL 1964054, at *16 (S.D.N.Y. April 24, 2003) (quoting Griffin v. Law Firm of Harris, Beach, Wilcox, Rubin and Levey, 112 A.D.2d 514, 516, 490 N.Y.S.2d 919, 921 (3d Dep't 1985)), but must also play a significant role in "the purpose and subject of the

work." Preston v. Martin Bregman Products, Inc., 765 F. Supp. 116, 118–19 (S.D.N.Y. 1991) (noting that because "merely incidental or isolated uses . . . are not actionable," there must be a "direct and substantial connection" between plaintiff's name and the work in which it appeared); see also Netzer v. Continuity Graphic Associates, Inc., 963 F. Supp. 1308, 1325–26 (S.D.N.Y. 1997) ("In determining whether a name or likeness is used primarily for advertising or trade in violation of the statute, a court will weigh the circumstances of the use, its extent or degree, and the character of the use.").

The mention of Mr. Torain's nickname once during a thirty-three minute interview about Mr. Taylor, a famous rapper, The Game Interview at The Breakfast Club Power 105.1, YouTube (Sept. 23, 2015), https://www.youtube.com/watch?v=YqQEzOXDHjE, constitutes incidental use and is insufficient to establish a claim under section 51. See Lohan v. Perez, 924 F. Supp. 2d 447, 454–56 (E.D.N.Y. 2013) (applying incidental use defense where plaintiff's name was mentioned in a song once, was not used in the title or refrain, and "appear[ed] entirely incidental to [song's] theme"); Candelaria v. Spurlock, No. 08 CV 1830, 2008 WL 2640471, at *5 (E.D.N.Y. July 3, 2008) (granting motion to dismiss based, in part, on incidental use exception where plaintiff appeared in documentary for three to

four seconds captured by hidden camera).

Accordingly, because the Complaint fails to state a claim under section 51, the plaintiff's first cause of action should be dismissed as against all the defendants.

B.   Intentional Infliction of Emotional Distress

In his second cause of action, the plaintiff contends that the defendants caused him severe emotional distress, mental anguish, humiliation, and injuries when Mr. Casey encouraged Mr. Taylor to make threatening statements and iHeart Media and Revolt broadcast those statements. (Complaint, ¶¶ 28, 30, 37).

Under New York law, a claim of intentional infliction of emotional distress requires a showing of "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Guan N. v. New York City Department of Education, No. 11 Civ. 4299, 2013 WL 67604, at *25 (S.D.N.Y. Jan. 7, 2013) (quoting Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996)); see also Howell, 81 N.Y.2d at 121, 596 N.Y.S.2d at 353.   To be considered "extreme and outrageous," conduct must be "so outrageous in character, so extreme in degree, as to be regarded as atrocious, and utterly intolerable in a civilized society." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (quoting Howell, 81 N.Y.2d at 122,

12

596 N.Y.S.2d at 353).  Due to this very high threshold, claims for intentional infliction of emotional distress "generally 'do not survive dispositive motions.'"  Allam v. Meyers, No. 09 Civ. 10580, 2011 WL 721648, at *6 (S.D.N.Y. Feb. 24, 2011) (quoting Hallgren v. Bell Atlantic Corp., No. 99 Civ. 11937, 2000 WL 726496, at *3 (S.D.N.Y. May 30, 2000)); see also Elmowitz v. Executive Towers at Lido, LLC, 571 F. Supp. 2d 370, 378 (E.D.N.Y. 2008) ("[N]one of the IIED claims considered by the New York Court of Appeals have survived because the conduct was not sufficiently outrageous.").

Even accepting the Complaint's allegations as true and according the plaintiff the benefit of every favorable inference, the defendants' actions do not approach the type of egregious conduct necessary to support a claim for intentional infliction of emotional distress.  Courts have repeatedly declined to hold threats such as Mr. Taylor's to be extreme and outrageous.  See, e.g., Saleh v. United States, No. 12 Civ. 4598, 2013 WL 5439140, at *11-12 (S.D.N.Y. Sept. 27, 2013) (holding that defendant's "indirect threats" and plaintiff's resulting fear "that at any moment he could be attacked physically or harassed[,] . . . kidnapped[,] or even killed" did not rise to required level of conduct), aff'd, 580 F. App'x 22 (2d Cir. 2014); Walther v. Maricopa International Investment

13

_Corp._, No. 97 Civ. 4816, 1998 WL 689943, at *4 (S.D.N.Y. Sept. 1998) (concluding that "repeated verbal threats such as '****sucker you're gonna pay'" fell short of "extreme and outrageous" threshold); Owen v. Leventritt, 174 A.D.2d 471, 472, 571 N.Y.S.2d 25, 25 (1st Dep't 1997) (finding public threat to kill pregnant plaintiff insufficiently outrageous).  It follows that broadcasting or encouraging mere threats also fails to constitute "extreme and outrageous" behavior.[3]

Because none of the defendants' alleged conduct was sufficiently "extreme and outrageous" as a matter of law,[4] I

---

[3] The cases cited by the plaintiff (Pl. Memo. at 6) do not support his position, as they involve conduct far more outrageous than the defendants' threats here.  See, e.g., Mejia v. City of New York, 119 F. Supp. 2d 232, 285-86 (E.D.N.Y. 2000) (police officer uttered ethnic slurs at pregnant plaintiff, ordered strip search without reasonable belief she had committed crime, and threatened she would have to deliver her child in prison); Bower v. Weisman, 639 F. Supp. 532, 541 (S.D.N.Y. 1986) (defendant placed three armed guards in plaintiff's lobby and changed locks to plaintiff's apartment to enter and remove artwork from it without consent).

[4] Citing Halio v. Lurie, 15 A.D.2d 62, 222 N.Y.S.2d 759 (2d Dep't 1961), the plaintiff appears to argue that his claim should survive because it is exclusively "for the trier of fact to determine whether [the] defendant[s'] conduct went beyond all reasonable bounds of decency."  (Pl. Memo. at 6).  This is an incorrect statement of law.  Halio was decided prior to the New York Court of Appeals' opinion in Fischer v. Maloney, 43 N.Y.2d 553, 402 N.Y.S.2d 991 (1978), which defined intentional infliction of emotional distress as a tort predicated on conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id. at 557-58, 992-93 (quoting Restatement of Torts (2d), § 46, comment d).  Subsequently, courts have consistently held that

14

recommend that Mr. Torain's claim of intentional emotional infliction of emotional distress be dismissed.

C.   Negligent Infliction of Emotional Distress

The plaintiff also asserts a claim for negligent infliction of emotional distress against all the defendants.  A prima facie case of negligence requires a plaintiff to establish (1) the existence of a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) that such breach proximately caused the plaintiff's injury.  Alvino v. Lin, 300 A.D.2d 421, 421, 751 N.Y.S.2d 585, 586 (2nd Dep't 2002); see also Lerner v. Fleet Bank, N.A., 459 F.3d 273, 286 (2d Cir. 2006).  In New York, a plaintiff may recover for purely emotional injuries by advancing one of two theories, both of which "require a threat or danger of physical harm."  Kenney v. Clay, No. 6:11-CV-790, 2016 WL 1156747, at *7 (N.D.N.Y. March 23, 2016); see also E.B. v. Liberation Publications, Inc., 7 A.D.3d 566, 567, 777 N.Y.S.2d 133, 135 (2d Dep't 2004).  A cause of action arises under the "bystander theory" if the plaintiff is threatened with

---

whether conduct "may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance."  Stuto, 164 F.3d at 827; see also Rizzo v. Edison, Inc., 419 F. Supp. 2d 338, 349 (W.D.N.Y. 2005) ("Ordinarily, whether the challenged conduct is sufficiently outrageous will be determined as a matter of law."), aff'd, 172 F. App'x 391 (2d Cir. 2006); Howell, 81 N.Y.2d at 121, 596 N.Y.S.2d at 353 (identifying "the outrageousness element [as] the one most susceptible to determination as a matter of law").

physical harm as a result of the defendant's negligence and suffers emotional injury from witnessing the death or serious bodily injury of an immediate family member. <u>Mortise v. United States</u>, 102 F.3d 693, 696 (2d Cir. 1996). Under the "direct duty theory," the plaintiff's emotional injury must be caused by the defendant's breach of a special duty that unreasonably endangered the plaintiff's own physical safety. <u>Id.</u>

Mr. Torain has not alleged any facts from which it would be possible to conclude that he was in immediate in physical danger. "[T]he unreasonable endangerment element of a cause of action for negligent infliction of emotional distress involves an objective inquiry turning on whether a plaintiff's physical safety actually was endangered, not a subjective evaluation dependent on the plaintiff's state of mind." <u>St. John v. Rein Teen Tours, Inc.</u>, No. 99 Civ. 2537, 2000 WL 977685, at *3 (S.D.N.Y. July 17, 2000) (stating that "it is not sufficient for a plaintiff merely to posit theoretical potential harms"); <u>see also</u> <u>Saleh</u>, 2013 WL 5439140, at *12 (concluding that statement to third party of defendant's desire to "make [plaintiff] disappear . . . by killing him or putting him in Guantanamo" was insufficient "to show that [d]efendant ever endangered his physical safety").

Additionally, the complaint contains no facts to support a

finding that any of the defendants owed the plaintiff a duty of care.  See Almeciga v. Center for Investigative Reporting, Inc., 121 F. Supp. 3d 379, 382-83 (S.D.N.Y. 2015) ("The threshold question in any negligence action is whether the alleged tortfeasor owes a duty of care to the injured party, and the existence and scope of that duty is a legal question for the courts to determine." (quoting Sheila C. v. Povich, 11 A.D.3d 120, 125, 781 N.Y.S.2d 342, 347 (1st Dep't 2004))).  Mr. Torain's generalized assertions that the defendants owed him a "duty of care not to expose [him] to severe emotional distress, mental anguish, [and] humiliation" and "to stop engaging in the conduct describe herein and/or to intervene to prevent or prohibit said conduct" (Complaint, ¶¶ 35, 45), do not plausibly suggest that the defendants owed a duty to him in any cognizable legal sense, see Palsgraf v. Long Island Rail Road Co., 248 N.Y. 339, 341, 162 N.E. 99, 99 (1928) ("Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right."); see also General Star Indemnity Co. v. Platinum Indemnity Ltd., No. 00 Civ. 4960, 2002 WL 31159106, at *3 (S.D.N.Y. Sept. 27, 2002) ("A plaintiff must show more than a duty owed to a potentially limitless class of people, but rather a specific duty owed to the plaintiff."), much less the type of special duty required to support a claim for negligent

infliction of emotional distress, see Druschke v. Banana Republic, Inc., 359 F. Supp. 2d 308, 315 (S.D.N.Y. 2005) (explaining that a claim of negligent infliction of emotional distress "requires proof of a duty owed by the defendant to the plaintiff that is far more specific than the more generalized duty to avoid negligently injuring another").

Mr. Torain contends that, as his former employer, iHeart Media has a "duty to keep [him] safe from harm" and that iHeart Media and Revolt have a "direct duty to ensure that they do not air and broadcast direct threats to third parties." (Pl. Memo. at 8). However, there is no basis for either assertion. To the contrary, employers do not owe a specific duty to employees or former employees, see, e.g., Day v. City of New York, No. 15 Civ. 4399, 2015 WL 10530081, at *19 (S.D.N.Y. Nov. 30, 2015) ("Plaintiff has not alleged that defendants owed him any duty separate from their general obligations as an employer . . . ."); Abdullajeva v. Club Quarters Inc., No. 96 Civ. 0383, 1996 WL 497029, at *9 (S.D.N.Y. Sept. 23, 1996) (dismissing negligent infliction of emotional distress claim where plaintiffs did not allege duty "above and beyond that which a corporation has to its employees"), and "mass media broadcasters and publishers owe no duty to the general public who may view their broadcasts or read their publications," Brandt v. Weather Channel, Inc., 42 F.

18

Supp. 2d 1344, 1346 (S.D. Fla.) (citing <u>First Equity Corp. of</u>
<u>Florida v. Standard & Poor's Corp.</u>, 869 F.2d 175 (2d Cir.
1989)), <u>aff'd</u>, 204 F.3d 1123 (11th Cir. 1999); <u>accord</u> <u>Doe v.</u>
<u>Gangland Productions, Inc.</u>, 730 F.3d 946, 961 (9th Cir. 2013)
(dismissing claim of negligent infliction of emotional distress
because television producers who failed to conceal former gang
member's identity as promised had no legal duty not to reveal
private facts about him during broadcast); <u>Tilton v. Playboy</u>
<u>Entertainment Group, Inc.</u>, No. 8:05 CV 692, 2007 WL 80858, at
*2-3 (M.D. Fla. Jan. 8, 2007) (rejecting "negligence claim based
on a breach of 'a duty of reasonable care not to broadcast or to
transmit videos . . . depicting the minor Plaintiff engaging in
sexually-explicit conduct'"); <u>Stancik v. CNBC</u>, 420 F. Supp. 2d
800, 808 (N.D. Ohio 2006) ("[N]ews broadcasters do not owe the
general public a heightened duty of care.").

　　　　Accordingly, I recommend that the plaintiff's third cause
of action be dismissed with respect to all
defendants. <u>See</u> <u>Curcio v. Roosevelt Union Free School District</u>,
No. 10 CV 5612, 2012 WL 3646935, at *22 (E.D.N.Y. Aug. 22, 2012)
("Not only has plaintiff failed to allege any danger to his
physical safety, but he has failed to allege facts to suggest
that defendants owed him a specific, unique duty.").

　　　　2.　　<u>Negligent Hiring, Supervision, and Retention</u>

Because the Complaint contains no allegations sufficient to state a claim of ordinary negligence against any of the defendants, it logically follows that the plaintiff's negligent hiring, supervision, and retention claims against iHeart Media and Revolt must also fail.   See Abdel-Karim v. EgyptAir Airlines, 116 F. Supp. 3d 389, 410 (S.D.N.Y. 2015) ("Because the plaintiff has not demonstrated any negligent conduct by [defendant's] employees, no rational jury could find [defendant] liable to the plaintiff for [a claim of negligent hiring, supervision, or retention]."), aff'd, __ F. App'x __, 2016 WL 2848672 (2d Cir. May 16, 2016).

To state a claim for negligent hiring, retention, or supervision under New York law, a plaintiff must satisfy the standard negligence elements and, additionally, show that (1) the tortfeasor and the defendant were in an employee-employer relationship; (2) the employer knew or should have known of the employee's propensity for the alleged tortious conduct; and (3) the tort was committed on the employer's premises or with the employer's chattels.   Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004).   "[A]n underlying requirement in actions for negligent [hiring or retention] is that the [defendant's] employee is individually liable for a tort . . . ."   Primeau v. Town of Amherst, 303 A.D.2d 1035, 1036, 757 N.Y.S.2d 201, 203

(4th Dep't 2003) (first and second alteration in original) (quoting Campbell v. Colley, 113 Ohio App.3d 14, 22, 680 N.E.2d 201, 206 (4th Dist. 1996))).

Having already determined that Mr. Torain has not alleged a viable tort claim against Mr. Casey, I recommend dismissal of his claim for negligent hiring, supervision, and retention against iHeart Media and Revolt. See Farash v. Continental Airlines, Inc., 574 F. Supp. 2d 356, 368 (S.D.N.Y. 2008) ("Since plaintiff has failed to allege negligence on the part of the [employee], it necessarily follows that plaintiff has failed to allege any facts from which a viable cause of action for negligent hiring, training, or supervision could be gleaned."), aff'd, 337 F. App'x 7 (2d Cir. 2009).

### 3.   Gross Negligence

The plaintiff's failure to identify a cognizable duty of care owed to him by any of the defendants is similarly fatal to his claims of gross negligence against iHeart Media and Revolt. See Pasternack v. Laboratory Corp. of America, 892 F. Supp. 2d 540, 552 (S.D.N.Y. 2012) ("Where a claim for ordinary negligence fails, a gross negligence claim necessarily fails."); Farash, 574 F. Supp. 2d at 368 ("[W]ithout a viable claim of negligence, the plaintiff cannot prove gross negligence.").

Moreover, to recover for gross negligence, a plaintiff must not only show that the defendant owed him a duty, but also that the "defendant failed to exercise 'even slight care' in the discharge of that duty." Dilworth v. Goldberg, 914 F. Supp. 2d 433, 473 (S.D.N.Y. 2012) (quoting Food Pageant, Inc. v. Consolidated Edison Co., 54 N.Y.2d 167, 172, 445 N.Y.S.2d 60, 429 N.E.2d 738 (1981))); see also Farash, 574 F. Supp. 2d at 368 (describing "fourth element" of gross negligence claim as requirement that "defendant's conduct 'evinces a reckless disregard for the rights of others or "smacks" of intentional wrongdoing.'" (quoting AT & T v. City of New York, 83 F.3d 549, 556 (2d Cir. 1996))).  Even assuming that Mr. Torain stated a cause of action for negligence, he has not alleged actions by the defendants so egregious as to rise to the level of gross negligence.  Lane v. Fein, Such and Crane, LLP, 767 F. Supp. 2d 382, 392 (E.D.N.Y. 2011); see also Armstrong v. Brookdale University Hospital and Medical Center, No. 98 CV 2416, 2002 WL 13222, at *8 (E.D.N.Y. Jan. 3, 2002) (likening "egregious or conspicuously bad" conduct necessary for gross negligence to "extreme and outrageous" conduct required to advance claim of intentional infliction of emotional distress).  I therefore recommend that the plaintiff's claims of gross negligence against iHeart Media and Revolt be dismissed.

D.    Leave to Amend

Given Mr. Torain's pro se status, I recommend that he be granted leave to amend his complaint to state a plausible claim consistent with the standards discussed above. See Gomez v. USA Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999) (per curiam) (holding that pro se litigant should be afforded at least one opportunity to amend complaint prior to dismissal for failure to state a claim, "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim").

Mr. Torain is cautioned, however, that, like all litigants, pro se plaintiffs have an obligation to submit only pleadings that are supported by fact and law, and that a breach of this duty can result in sanctions, including an award of attorneys' fees to the defendants. Fed. R. Civ. P. 11(b), (c).

Conclusion

For the foregoing reasons, I recommend granting the defendants' motions to dismiss (Docket nos. 9 and 13) and dismissing the complaint without prejudice to the plaintiff's filing an amended complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of this order to file written objections to this Report and

23

1960, 500 Pearl Street, New York, New York 10007.   Failure to
file timely objections will preclude appellate review.


                    Respectfully submitted,

                    JAMES C. FRANCIS IV
                    UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         September 16, 2016

Copies mailed this date to:

Troi Torain
163 Warner Dr.
Saylorsburg, PA 18353

Marina C. Tsatalis, Esq.
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas
New York, NY 10019

Garrett D. Kennedy, Esq.
DLA Piper LLP
1251 Avenue of the Americas
New York, NY 10020

Timothy D. Kevane, Esq.
Sedgwick, LLP
225 Liberty St., 28th Floor
New York, NY 10281